JIMMY CLAY HARRINGTON v. BARBARA J. STEVENS, ADMINISTRATOR OF THE ESTATE OF ROBERT STEVEN STEVENS, A.K.A ROBERT STEVEN BANNER, JOSEPH MARION HENSON, AND NATIONWIDE MUTUAL INSURANCE COMPANY

No. 398A92

(Filed 10 September 1993)

1. **Insurance §§ 509, 527— underinsured and uninsured motorist coverage — stacking — principles**

Several principles have evolved from the interpretation of N.C.G.S. § 20-279.21(b)(3) and N.C.G.S. § 20-279.21(b)(4). One is that the purpose of uninsured and underinsured coverage is different from liability coverage in that the statutory scheme for liability coverage is essentially vehicle oriented while uninsured and underinsured coverage is essentially person oriented. Another is that N.C.G.S. § 20-279.21(b)(3) provides for two classes of insureds: the first consists of the named insured and, while resident of the same household, the spouse of the named insured and relatives of either; and the second consists of any persons who use an insured vehicle with the consent of the owner and guests in the vehicle. Insureds of the first class are covered whether or not they are injured while in

the insured vehicle. Insureds of the second class are insured only when in the vehicle and only for coverage provided for persons in that vehicle.

Am Jur 2d, Automobile Insurance §§ 293 et seq.

Rights and liabilities under "uninsured motorists" coverage. 79 ALR2d 1252.

Who is "member" or "resident" of same "family" or "household," within no-fault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR3d 804.

2. Insurance § 528 (NCI4th) — underinsured motorist coverage — stacking — adult child in same household with father and brother

A plaintiff was allowed to stack underinsured motorist coverage both interpolicy and intrapolicy where plaintiff was injured in an automobile accident with an underinsured motorist; plaintiff's automobile insurance policy with defendant Nationwide provided underinsured coverage on two vehicles in the amounts of $50,000 per person and $100,000 per accident; Nationwide had also issued policies to the plaintiff's father and brother with whom plaintiff was residing; each provided UIM coverage for two vehicles in the amounts of $50,000 per person and $100,000 per accident; plaintiff brought this action seeking a determination of whether he was entitled to stack the policies; and the trial court granted plaintiff's motion for summary judgment. Although defendant contended that the owner must share some benefit before an insured of the first class may be covered, N.C.G.S. § 20-279.21(b)(3) says that a relative living in the same household with the owner of the policy is a "person insured" and, if a person is a "person insured" under a policy, then he or she should have all the rights of a person insured by the policy.

Am Jur 2d, Automobile Insurance § 322.

3. Insurance § 530 (NCI4th) — underinsured motorist coverage — stacking — reduction clause — not effective as to plaintiff's policy

Defendant Nationwide may not reduce its payments arising from an automobile accident for anything paid under the underinsured motorist coverage on the policy owned by the plaintiff where plaintiff was allowed to stack the coverages owned by his father and brother, with whom he lived, and

HARRINGTON v. STEVENS

[334 N.C. 586 (1993)]

Nationwide contended that whatever plaintiff receives through those coverages must be reduced by what he received from the tortfeasor's liability coverage and from the underinsured motorist coverage on his own vehicles. The reduction for which this clause provides is for payments made for those legally responsible to the plaintiff, which would be the tortfeasor.

**Am Jur 2d, Automobile Insurance § 322.**

**4. Insurance § 528 (NCI4th) — underinsured motorist coverage — stacking — six vehicles — not a fleet policy**

Plaintiff was not prevented from stacking underinsured motorist coverage from his brother's and father's policies by the fleet policy provision of N.C.G.S. § 20-279.21(b)(4). Although defendant Nationwide contended that stacking in this case would be contrary to the purpose of the statute because policies covering six vehicles would be stacked and a fleet policy is defined as a policy covering five or more vehicles, Nationwide does not contend that any policy in this case was a fleet policy.

**Am Jur 2d, Automobile Insurance § 322.**

Justice MEYER dissenting.

Chief Justice EXUM and Justice PARKER join in this dissenting opinion.

Appeal as of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 107 N.C. App. 730, 421 S.E.2d 605 (1992), which reversed judgment for the plaintiff entered by Martin (Lester P., Jr.), J., at the 20 May 1991 Civil Session of Superior Court, Alexander County. Heard in the Supreme Court 14 April 1993.

The facts giving rise to this action are not in dispute. On 24 July 1988, the plaintiff Jimmy Clay Harrington was injured in an automobile accident caused by the negligence of Robert Steven Stevens. As to the injuries sustained by the plaintiff, Stevens' automobile was underinsured.

An automobile insurance policy issued to the plaintiff by the defendant Nationwide was in effect at the time of the accident. The policy provided the plaintiff with underinsured motorist (UIM) coverage on two vehicles in the amounts of $50,000 per person and $100,000 per accident. In addition, Nationwide had issued

## HARRINGTON v. STEVENS

[334 N.C. 586 (1993)]

automobile insurance policies to the plaintiff's father and brother with whom the plaintiff was residing. Both of these policies were in effect at the time of the accident and each provided UIM coverage for two vehicles in the amounts of $50,000 per person and $100,000 per accident.

Nationwide tendered $100,000 in UIM benefits to the plaintiff which amount represented $50,000 of "stacked" coverage for the two vehicles covered by the policy issued to the plaintiff. The plaintiff, who was living in the same residence as his father and brother at the time of the accident, filed a claim with Nationwide for $200,000 in UIM benefits under his father's and brother's policies. Nationwide denied the claim and the plaintiff instituted this action seeking a determination of whether he was entitled to interpolicy stacking of his father's and brother's policies and, whether he was entitled to intrapolicy stacking of the coverages provided within each of those policies. Both parties filed motions for summary judgment. The trial court granted the plaintiff's motion. Nationwide appealed and the Court of Appeals reversed. The plaintiff appealed to this Court based on the dissenting opinion.

*Joel C. Harbison for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates and ToNola D. Brown, for defendant-appellee Nationwide Mutual Insurance Company.*

WEBB, Justice.

[1] This case brings to the Court a question involving aggregating or stacking underinsured motorist coverages in several automobile policies. The question of stacking uninsured and underinsured motorist coverages has been a fruitful source of litigation. *See Lanning v. Allstate Insurance Co.*, 332 N.C. 309, 420 S.E.2d 180 (1992); *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992); *Bass v. N.C. Farm Bureau Mut. Ins. Co.*, 332 N.C. 109, 418 S.E.2d 221 (1992); *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991); *Sutton v. Aetna Casualty and Surety Co.*, 325 N.C. 259, 382 S.E.2d 759 (1989).

The stacking litigation has arisen in large part from questions involving the interpretation of two parts of N.C.G.S. § 20-279.21, which was a part of the Motor Vehicle Safety and Financial Respon-

sibility Act in effect at the time the accident in this case occurred. N.C.G.S. § 20-279.21(b)(3) provided in part:

> For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

N.C.G.S. § 20-279.21(b)(4) provided in part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-40-15(9) and (10).

Several principles have evolved from the interpretation of these two sections. One principle is that the purpose of uninsured and underinsured coverage is different from liability coverage. The statutory scheme for liability coverage is essentially vehicle oriented while uninsured and underinsured coverage is essentially person oriented. *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. at 148, 400 S.E.2d at 50. Another principle which has been developed is that N.C.G.S. § 20-279.21(b)(3) provides for two classes of persons insured. The first class consists of the named insured and, while resident of the same household, the spouse of the named insured and relatives of either. The second class consists of any persons who use an insured vehicle with the consent of the owner, and guests in the vehicle. Insureds of the first class are covered whether or not they are injured while in the insured vehicle. Insureds of the second class are insured only when in the vehicle and only for coverage provided for persons in that vehicle. *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127,

*disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986). The plaintiff in this case was an insured of the first class.

[2]   It seems from the principles discussed above that the plaintiff, being an insured of the first class under the policies of his father and his brother, is covered by those policies and should be allowed to stack them with his own policy. In several cases, it has been held that an insured of the first class who is not an owner of the policy is covered by the policy and entitled to stack the coverages. *See Grain Dealers Mutual Ins. Co. v. Long*, 332 N.C. 477, 421 S.E.2d 142 (1992); *N.C. Farm Bureau Mut. Ins. Co. v. Hilliard*, 90 N.C. App. 507, 369 S.E.2d 386 (1988); *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387. The question raised in this case, that the owner must share some benefit before an insured of the first class may be covered, was not raised in any of those cases.

In this case, the Court of Appeals held that although the plaintiff was an insured of the first class under the policies of his father and his brother, he could not stack the coverages of those two policies with his own policy. The Court of Appeals based its holding on the language of *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124. In *Harris*, we held that a minor child living in the household with her parents was covered by the underinsured motorist coverages in her parents' policy.

In *Harris*, the insurer argued that the references to the owner in N.C.G.S. § 20-279.21(b)(4) showed that only the owner of the policy could stack the coverages. The insurer pointed specifically to that part of the subsection which said "it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage[.]" In answer to this argument, we left open the question of whether there must be benefit to the owner for the policy to cover other first class insureds and said it was clear that there was a benefit to the owner in that case. This benefit was the protection for his minor child whom he was obligated to support. The Court of Appeals in this case interpreted our opinion in *Harris* to mean that there must be some benefit to the owner for an insured of the first class to be covered by the owner's policy.

We believe the sections of the statute, as we have interpreted them, require that the plaintiff be allowed to stack, both interpolicy

and intrapolicy, the underinsured motorist coverages of the policies of his brother and his father. Subsection (b)(3) says a relative living in the same household with the owner of the policy is a "person insured." We have said this makes him or her an insured of the first class. If a person is a "person insured" under a policy then he or she should have all the rights of a person insured by the policy. We believe this specific language should govern over more general language as to how the owner should be benefitted. The plaintiff may stack because he is a person insured under each policy.

[3] Nationwide next contends that if the plaintiff is covered by the underinsured motorist coverages of his father and brother, whatever he receives through those coverages must be reduced by what he received from the tortfeasor's liability coverage and from the underinsured motorist coverage on his own vehicles. It bases this contention on a clause found in the policies of the plaintiff's father and brother which says:

> Any amount otherwise payable for damages under this coverage shall be reduced by all sums:
>
> 1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible.

Nationwide contends this is a reduction clause which reduces what it must pay. Assuming that if we interpreted this clause according to Nationwide's contention it would not violate N.C.G.S. § 20-279.21, we do not read this clause as does Nationwide. The reduction for which this clause provides is for payments made for those legally responsible to the plaintiff. This would be the tortfeasor. Nationwide may not reduce its payments for anything paid by the underinsured motorist coverage on the policy owned by the plaintiff. *Dungee v. Nationwide Mutual Insurance Co.*, 108 N.C. App. 599, 424 S.E.2d 234 (1993).

[4] Finally, Nationwide contends that the "fleet policy" provision of N.C.G.S. § 20-279.21(b)(4) prevents the plaintiff from stacking in this case. It says that allowing stacking in this case means that policies covering six vehicles will be stacked. It says this is contrary to the purpose of the statute because a fleet policy is defined as a policy covering five or more vehicles. Nationwide does not contend that any policy involved in this case is a fleet policy. The fleet policy provision does not apply.

We hold that the plaintiff is entitled to stack with his own policy the policies of his father and brother, both interpolicy and intrapolicy. Any amount he receives under these policies will be reduced by the amount he receives from the tortfeasor's exhausted liability policy.

For the reasons stated herein, the decision of the Court of Appeals is reversed.

REVERSED.

Justice MEYER dissenting.

I dissent from the majority opinion.

Plaintiff in this case, Jimmy Harrington, is an adult who has children of his own. Neither his father nor his brother, with whom plaintiff is staying temporarily, had any legal obligation to support him or to pay his medical expenses. Following his separation from his wife barely a month before he was injured, he had moved into his father's home, which was immediately next door, but during that entire time, he was "temporarily" living with his girlfriend and, in fact, had spent only a few nights in his father's house. His brother Ricky was also separated from his wife and had been living with his father for about seven months.

In *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992), in which I and others dissented, this Court held that the class one insured minor daughter of the policy owners was entitled to receive stacked benefits. Michelle Harris was entitled to intrapolicy stacking not just because she was a class one insured person, not solely because she was the daughter of the policy owners, and not because she was a minor. The nonowner minor plaintiff in *Harris* was entitled to stack UIM benefits under her parents' policy because her receipt of such benefits provided a direct, identifiable, cognizable, and real benefit to her parents, the policy owners. Thus, *Harris* holds that nonowner class one insureds are entitled to stack when such stacking provides benefit to the policy owner.

The majority in *Harris* declined to decide whether the insured was "correct in interpreting the statute to mean that only 'owners' are intended to benefit from the stacking of UIM coverages" but held that the plaintiff, a nonowner class one insured person, was entitled to stack because, the policy owners did, in fact, benefit

by allowing the nonowner plaintiff to stack. *Id.* at 193, 420 S.E.2d at 129-30. The *Harris* opinion goes no further than to say that stacking is allowed for nonowner class one insureds when it benefits the policy owner.

In *Harris*, the minor plaintiff was dependent on her parents, the policy owners, for her support. The policy owners had a legal duty to support their child to the best of their abilities, and purchasing insurance to cover their daughter fulfilled part of their support duties. Moreover, purchasing insurance for their daughter served to reduce their potential personal financial obligation should their minor daughter be injured in an automobile accident.

Even as a nonowner class one insured, plaintiff here should not be allowed to interpolicy or intrapolicy stack because neither his father nor his brother will receive a real, cognizable benefit by allowing plaintiff to recover and stack the coverages on their policies along with the coverage he has already received pursuant to his own policy. Plaintiff was in no way dependent on either his father or his brother for support. The facts show that neither was providing support for the plaintiff. Plaintiff had moved his belongings to his father's house for storage and perhaps had spent a few nights in his father's household at his new permanent address. During the four weeks and four days that passed from the time plaintiff separated from his wife until the date of the accident, he had spent "several weeks" living, not in his father's house, but in another county with his girlfriend. Neither his father nor his brother had any legal obligation to provide for plaintiff's support. Therefore, there is no real and direct benefit to those policy owners, when plaintiff is allowed to recover and stack benefits under their policies.

Chief Justice Exum and Justice Parker join in this dissenting opinion.